People ex rel. Tishman & Son *v*. Cantor.    **495**

Misc.]         Supreme Court, December, 1919.

People ex rel. Julius Tishman & Son, Relator, *v*. Jacob A. Cantor et al., as Commissioner, etc., Respondents.

(Supreme Court, New York Special Term, December, 1919.)

Certiorari — when board of tax commissioners of city of New York has no legal power to review the action of a previous board — jurisdiction — assessment and taxation — statutes.

Whether a statutory power conferred upon an administrative board is *quasi* judicial or merely administrative depends upon the proper construction of the statute, and the board may not review a determination made by it in the exercise of a *quasi* judicial power unless the statute so provides.

The rule of finality in matters within their jurisdiction applies no less to the determination of special tribunals than to the decisions of courts of general jurisdiction.

A board of tax assessors is not a continuing entity regardless of changes in its membership.

The action of one of the board of tax commissioners of the city of New York in reducing, after a hearing, an assessment upon the real property of relator for the year 1918, was on the 28th of December, 1917, approved by resolution of said board. On January 1, 1918, the commissioners who had so far acted in the matter went out of office and the new board on January 31, 1918, without notice to the relator, adopted a resolution restoring the original assessment. On certiorari to review the tax for 1918, which was computed upon the assessment therefor, *held,* that the new board had no legal power to review the action of the previous board; the power to reconsider such action ceased when the members of the previous board went out of office.

The assessment under review was also void for the reason that the determination of the new board was not made within thirty days after the due filing, prior to November 15, 1917, of the application for the reduction of the assessment as originally made.

Certiorari proceedings.

James M. Vincent (Curtis A. Peters, of counsel), for relator.

William P. Burr (Harry S. Lucia and R. M. de Acosta, of counsel), for respondent.

PLATZEK, J.   Certiorari to review an assessment of real property for taxation for the year 1918.  Prior to October 1, 1917, the property was assessed by a deputy tax commissioner at $1,300,000.  That assessment was entered on the books of annual record.  These books were opened for inspection and correction from October 1 to November 15, 1917, as required by the charter.  Prior to November fifteenth an application for reduction of the assessment was duly filed by the then owner of the property.  Notice of a hearing upon this application was given to the applicant and a hearing was held before one of the commissioners on December 20, 1917.  The commissioner concluded that the assessment ought to be reduced to $1,120,000 and so noted on the application.  On December 28, 1917, his action was approved by resolution of the board.  On January 1, 1918, the commissioners who had so far acted in the matter went out of office.  New commissioners were appointed in their place.  On January 31, 1918, the new board, without notice to the owner of the property, took up the consideration of the assessment in question and by resolution restored the original valuation of $1,300,000.  The assessment rolls were made up accordingly and the tax for 1918 has been computed upon that assessment.  The relator is the present owner of the property and challenges the legality of the action of the new board.  The respondents are the commissioners composing that board.  The relator contends that the board of tax commissioners, having once acted upon the application for reduction of the assess-

ment, was without power to reconsider its action and change its determination. *A fortiori,* the new board could not review and reverse the decision of its predecessors in office. It is true that where *quasi* judicial power is conferred upon an administrative officer or body, the exercise of such power is not generally subject to review by the official or the board making the determination unless the power of review is also conferred by the statute. *People ex rel. Chase* v. *Wemple,* 144 N. Y. 478. The question always is whether the power conferred was in its nature *quasi* judicial or merely administrative; and the answer to that question depends upon the proper construction of the statute conferring the power. *Matter of Equitable Trust Co.* v. *Hamilton,* 226 N. Y. 241, 245. But what was done here, if otherwise lawful, would have been rendered illegal and void by the failure to give notice of the proposed revision to the owner with an opportunity to him to be heard in defense of his interests. Greater New York Charter, § 896; *People ex rel. Central Stamping Co.* v. *Barker,* 86 Hun, 240; *People ex rel. Littman* v. *Wells,* 91 App. Div. 172; *People ex rel. Simpson* v. *Wells,* 181 N. Y. 252, 257; *People ex rel. Chamberlain* v. *Forrest,* 96 id. 544. Furthermore, the board which came into office on January 1, 1918, had no power to reverse the action of the previous board. It was not a case of reconsideration. Those who took the final action had no part in the original determination. Whatever power the board which reduced the assessment may have had to reconsider its action, that power ceased when its members went out of office and did not pass to its successors. *Matter of Equitable Trust Co.* v. *Hamilton, supra; Matter of Saratoga Lake Bridge Co.* v. *Walbridge,* 140 App. Div. 817, 822. The rule of finality, in matters within their jurisdiction, applies no less to the determination of special tribunals than

32

to the decisions of courts exercising general judicial powers. *Osterhoudt* v. *Rigney,* 98 N. Y. 222; *People ex rel. Smith* v. *Clarke,* 174 id. 259. A board of tax assessors is not a continuing entity regardless of changes in its membership. *People ex rel. Eckerson* v. *Zundel,* 157 N. Y. 513. The relator makes the further point that the action of the new board on January 31, 1918, was not taken within the time limited by the statute, and was, for that reason also, void. Section 898 of the charter provides that where evidence upon any application for reduction of an assessment is taken before a single commissioner, as was done in this case, the decision of the board upon the application shall be rendered within thirty days after the filing of the application and the testimony in the main office of the department, and in no case later than the first day of February. It seems to be conceded that the new board did not act within the thirty-day period thus prescribed, although there was opportunity to do so. But the respondents contend that the statute, in so far as this provision is concerned, is merely directory. They say that the only mandatory requirement is that the decision shall be rendered on or before February first. I find no warrant for the distinction thus sought to be drawn between the two provisions governing the time of decision. A requirement that decision shall be rendered within a defined period after submission of the controversy is too important to be so lightly brushed aside. Its evident purpose is that the matter shall be determined while it is still fresh in the mind of the commissioner who took the testimony. The power to assess and to tax property is purely statutory. Substantial compliance with all those provisions of the statute which materially affect the procedure and are designed for the protection and preservation of the rights of the taxpayer

is a condition precedent to the validity of the tax. Such provisions must be construed as mandatory. *Lancaster Sea Beach I. Co.* v. *City of New York,* 214 N. Y. 1, 11. The meaning of the statute is plain. Where the application and the testimony are filed more than thirty days prior to February first, the board may take thirty days and no longer to make its decision. Where the filing occurs later, the decision must be made on or before February first. The relator further contends that the assessment, even as reduced by the board on December 28, 1917, was too high. The testimony does not satisfy me that such is the case. The determination of January 31, 1918, should be annulled and the assessment fixed at $1,120,000, as determined by the resolution of December 28, 1917, with fifty dollars costs to the relator.

Ordered accordingly.