State ex rel. Baker Manufacturing Company, Appellant, vs. City of Evansville and another, Respondents.

*April 10—June 3, 1952.*

For the appellant there were briefs by *Nitcher & Gill* of Evansville, and *McGowan, Geffs, Geffs & Block* of Janesville, and oral argument by *Jacob Geffs* and *Walter Nitcher*.

*Donald F. Gallagher,* city attorney, and *John T. Harrington* of Madison of counsel, for the respondents.

BROWN, J. On the demand of plaintiff, Baker Manufacturing Company, sometimes referred to herein as the "company," the circuit court granted certiorari to review the proceedings of the board of review of the city of Evansville which had resulted in the board's sustaining an assessment of the company's personal property for the year 1949. After examination of the record and argument by counsel, the court, by judgment dated October 16, 1951, quashed the writ. The company appealed.

On July 9, 1949, in compliance with sec. 70.47 (7), Stats., the company filed with the board of review written objections that its personal property was assessed at 60 per cent of its full value, whereas other real and personal property in the city was assessed at 35 per cent thereof, thus compelling the company to pay more than its share of the total tax of the city. It requested that the valuation of its personal property be reduced to correspond to the values placed by the assessor on other property. Pursuant to statutory notice, the board of review held a hearing on the objections

August 23, 1949, at which company representatives and counsel appeared. Mr. Nitcher, attorney for the company, was sworn as a witness in the company's behalf and testified that he had made a study of all the real-estate sales in the city for the past two years and had found that the assessments of the parcels were regularly 31.25 per cent of the sale prices. He also offered an affidavit by the state supervisor of assessments that his records showed the proportion was 31.50 per cent of assessment to 100 per cent of sale price of real estate.

The procedure used in assessing personal property is for the taxpayer to make a return listing all his taxable personalty at its full value. The company made such a return and the assessor placed its personalty upon the tax roll at 60 per cent of the value shown in the return. The company presented evidence tending to show that tobacco in warehouse in the tax district was assessed at 12 per cent of the market price and certain other personal property owned by third parties appeared on the tax roll at 30 per cent of the value its owner had placed upon it.

The company called the city assessor, Phillip T. Smith, as a witness to examine him concerning his valuation of property appearing on the tax roll. At the beginning of the examination the city attorney stated: "I will be very frank to admit that I intend to object to most of your examination of Mr. Smith." The ground of the objection was that Mr. Smith's answers might impeach the oath on his assessor's roll. The oath, sec. 70.49, Stats., in brief, states that the assessment roll contains all the taxable real and personal property of the district and that every valuation of such property made by the assessor is the just and equitable value thereof as the assessor verily believes. By repeating this objection to pertinent questions concerning the methods used and the factors considered by the assessor in determining values, which objections were sustained by the board of review, and by stating his intention of interposing such objec-

tions to further questions on the subject, the city attorney effectively prevented the examination of the assessor by counsel for the company. This meeting adjourned without action by the board of review upon the company's objections to the assessment and without designating any time or place at which the hearing might be resumed.

On September 17, 1949, the city clerk notified Mr. Baker, president of the company, that at 7:30 p. m. on September 21, 1949, "The city council and board of review will hold an informal meeting at the city hall . . . to discuss the matter of the personal-property assessment of the Baker Manufacturing Company and invites you as an officer and director to be present." The meeting was held and Mr. Baker and Mr. Nitcher attended. The clerk's record of the meeting states that "an adjourned meeting of the board of review was called to order" and that Mr. Nitcher was sworn but no testimony was taken. In its original objection to the assessment and demand for a hearing the company had requested that all proceedings be reported. Upon such a request sec. 70.47 (8) (e), Stats., requires the board of review to cause its proceedings to be taken in full by a stenographer or recording device. This was not done at the September 21st meeting and the clerk, in his return to the writ of certiorari, certified it was omitted because the meeting was informal and the company had not requested a record to be made. The failure to have the proceedings of this meeting taken in full is one of the company's assignments of error on this appeal.

Under the call of the meeting this was not a meeting of the board of review for the taking of testimony or for action. It was designated an informal meeting of the board and the city council for discussion in which the president of the company was invited to participate. There was a stenographic reporter present and his record, filed with the trial court as part of an affidavit, shows the meeting to have been informal,

indeed, filled with recrimination and ending in a wrangle and abrupt adjournment. We consider that "proceedings" by the board of review would have been outside the call of this meeting and we agree with the city's contention that no verbatim report of what transpired at this meeting of the board and city council, held for the purpose stated in the call, was required by the statute.

On October 17, 1949, the city clerk issued a notice that there would be a meeting of the board in the clerk's office at 7:30 o'clock the next evening. The taxpayer admits that it had ten hours' notice of this meeting and it did not attend. At this meeting the assessor and other witnesses were examined in respect to the assessment of the Baker Manufacturing Company personal property. The board and the trial court relied on the assessor's testimony at this meeting to sustain the assessment. In *State ex rel. Kappa Sigma Building Asso. v. Bareis* (1937), 226 Wis. 229, 276 N. W. 317, we held that no notice was required to be given to a taxpayer of a hearing by the board of review affecting his assessment. The decision was based upon sec. 70.47 (1), Stats. 1935. There was then no statutory requirement, except in cities of the first class, that an objector should have a hearing with notice thereof. This statutory omission was remedied by ch. 101, Laws of 1949, creating sec. 70.47 (7), whereby a hearing is provided upon forty-eight hours' notice to the objector. The chapter was published May 16, 1949, and was in effect at the time of these proceedings. Since then sec. 70.47 (7) controls the matter of hearing after objections rather than sec. 70.47 (1) and (2). The authority of *State ex rel. Kappa Sigma Building Asso. v. Bareis, supra,* was lost when sec. 70.47 (7) was enacted. Sec. 70.47 (4) states that the board may adjourn from time to time until its business is completed and if an adjournment is had for more than one day a written notice shall be posted on the outer door of the place of meeting stating to what time said meeting is ad-

journed. It does not appear in the record that any such notice was posted and probably none could have been because the last, August 23d, meeting was not adjourned to any time. The meeting of October 18th was not in fact an adjourned meeting and the record of its proceedings does not refer to it as one held pursuant to an adjournment. It was a new meeting and in opening it the city attorney correctly stated for the record that it was "*called* for the purpose of the further consideration of the 1949 assessment." As a new meeting, held pursuant to call and not to an adjournment, we consider the statutory forty-eight hours' notice (sec. 70.47 (7) (b)) was required to be given to the objector or his attorney unless such notice was waived. It is not claimed that more than ten hours' notice was given, there was no waiver, and the objector and his attorney did not attend the meeting.

At the October 18th hearing the assessor was called as a witness by the city attorney who propounded questions concerning the assessment, of the same general tenor as those to which he had objected when the company's counsel asked them. They were now deemed to be in support of the assessor's oath or certificate not to impeach it. The answers tended to support the tax roll and at the close of the meeting the board of review voted to confirm the assessor's 1949 valuation of the personal property of Baker Manufacturing Company. We must hold that this meeting, held in the absence of the objecting taxpayer without giving him the statutory notice thereof, had no legal standing, and the testimony given at such a meeting without cross-examination by the objector will not serve to support the assessment. It was jurisdictional error to use it so and jurisdictional error to confirm the assessment at a meeting illegally held. No other action confirming the assessment was ever taken by the board of review, and the 1949 assessment of the company's personal property, accordingly, must be set aside.

. The following year the Baker Manufacturing Company objected to the 1950 assessment of its property and, after the board of review had confirmed the assessment, the company procured a writ of certiorari bringing up the record for review by the circuit court. The court, by judgment entered October 16, 1951, quashed the writ. The company appealed. In this proceeding the company complained that its real estate was assessed at 100 per cent of its true value, whereas the other real property in Evansville was assessed at 60 per cent to 70 per cent thereof, and the company's personal property was assessed at 100 per cent of its cash value while the personalty of others was assessed at 50 per cent or was not put on the roll at all. The company also complains that it was denied a full and fair hearing of its objections by the board of review.

Numerous hearings were held, at all of which the company was represented. The company had obtained and offered in evidence data from which the assessor presumably compiled the assessment roll. The assessments of the company's property were very materially higher than the total of the component elements. The assessor was asked by the company to explain or reconcile the discrepancy. The city objected that to permit answers to be given to such questions would impeach or contradict his certificate. The city attorney stated the law. to be that the taxpayer has no right to find out what the assessor did or why he did it, and the board by sustaining his objections to questions directed to that subject prevented such inquiry. We consider that the law is otherwise and the rulings of the board of review denied the taxpayer rights given him by statute, resulting in jurisdictional error.

Sec. 70.48, Stats., directs the assessor to appear at all hearings before the board of review and under oath submit to examination and fully disclose to said board such information as he may have touching his assessment and any other matters pertinent to the inquiry being made. The disclosure

is to be made to said board but the examination is not limited by the statute to examination by the city alone. The assessor's oath or certificate which the city contends the assessor would be impeaching or contradicting, by answering the taxpayer's questions, is that attached to the assessment roll. It is prescribed by sec. 70.49 and, in its effect, is a certificate that the assessment roll is complete and that the property listed and its valuation are set down by the assessor in good faith. It is not a certificate that the assessment roll contains no error but only that the assessor verily believes the roll is complete and the valuations of property are the just and equitable values. Questions directed to the factors used, or not used, by the assessor in arriving at values do not, *prima facie,* impeach or contradict the certificate that the assessor believes the values to be as he stated them. If such inquiry were impeachment, which we do not believe it is, that part of sec. 70.49 upon which the city now relies, reading: "No assessor shall be allowed . . . to contradict or impeach any affidavit or certificate made or signed by him as such assessor" is quite as much of a prohibition against similar questions when asked by the city attorney. The legislative intent is shown by sec. 70.48 which commands the assessor to submit to examination and make disclosure to the board in matters touching his assessment and other matters pertinent to the inquiry being made. The denial to the taxpayer of such right of examination was reversible error.

Baker Manufacturing Company offered testimony that certain property within the tax district in previous years was omitted from the tax roll in those years and in 1950 was included only once. The city contended that as long as it was included in 1950 it was no concern of the company's that it was omitted in previous years. Referring to sec. 70.44, Stats., the city says that the statute gives the taxation authorities power to reach back five years and add such omitted prop-

erty to the rolls for those years. This is not what the statute provides.

"70.44 *Assessment; property omitted.* Real or personal property omitted from assessment in any of the five next previous years unless previously reassessed for the same year or years, shall be entered once additionally for each previous year of such omission, designating each such additional entry as omitted for the year 19— (giving year of omission) and affixing a just valuation to each entry for a former year as the same should then have been assessed according to his best judgment, and taxes shall be apportioned, and collected on the tax roll for such entry."

Upon the objection of the city's counsel that the additional entries of such previously omitted property were not germane to the present tax roll, the taxpayer was not permitted to give evidence on this subject. Unless the omissions were so inconsequential as to bring the subject within the rule of *de minimis,* the taxpayer had a right to show that property which the statute directed to be entered several times was not so entered, thus underassessing the owners of that property and discriminating against owners who were thus compelled to pay more, including the objector.

Since the judgments from which these two appeals are taken must be reversed and the causes remanded for further proceedings, we think it well to make further comment upon the proceedings in the two cases.

Sec. 70.32, Stats., provides that "Real property shall be valued by the assessor . . . at the full value which could ordinarily be obtained therefor at private sale. . . ." By sec. 70.34 articles of personal property shall ". . . be valued by the assessor . . . at their true cash value. . . ." These sections have often been construed. In each class of property they presuppose a value at which a willing buyer and a willing seller would deal. For property whose market is restricted or nonexistent and for unique property which is not for sale the appraisal is necessarily based on many

factors other than actual sales of this or comparable property. Nevertheless, the task of the appraiser is to determine, as accurately as he can, the amount which the property would bring in the period for which the assessment is made, both buyer and seller being willing and able to deal. The statute and the assessor's oath contemplate the assessor's valuation will be 100 per cent of such theoretical sale price, but no taxpayer can be considered aggrieved by discrimination if the assessment is some fraction of such value, applied uniformly to all property. As we heard the city's oral argument and read its brief we gained the impression that it contends that there is uniformity of taxation if one fraction of true value is applied to all real property, although some other fraction thereof may be used in the case of personalty,—that the requirement of uniformity is satisfied so long as there is uniformity within the class. We do not consider this to be the law. In our view the command of sec. 1, art. VIII of the Wisconsin constitution, requires uniformity of taxation, according to value, of real and personal property without distinction. The methods of determining true, current value necessarily differ in the absence of significant sales, but when once the true value is arrived at, each dollar's worth of one sort of property is liable for exactly the same tax as a dollar's worth of any other sort of property, and to assess real property at a different fraction of the value than personalty is error. From this record we cannot be certain that there was such discrimination between real and personal property but the taxpayer's evidence tends to show that it existed and the city's brief appears to defend such a practice, while the taxpayer's efforts to find out from the assessor whether or not he sought for over-all uniformity or uniformity only among different properties of the same class were blocked by objections that any inquiry was an impeachment. If it is the practice of the city to tax value represented by real property on a different basis from value represented

by personal property, such practice is discriminatory and does not comply with the constitution or with the statutes.

Sec. 70.055, Stats., permits the city government to employ expert or additional clerical help to assist its assessor and directs that the city assessor and such expert help shall act as an assessment board and the concurrence of a majority of such board is requisite to a determination of any matter on which they are required to act. The city employed an expert, Mr. Wallace, to assist its assessor and Mr. Wallace brought to the task several additional men and women. The company contends that Mr. Wallace's entire group became members of the assessment board but the determination of values was by Mr. Wallace, only, in such group, and not by a majority of the board. We consider that the testimony establishes these others as additional clerical help, not expert assistants, and their participation in determining the values, and the concurrence of a majority of them in the decision, are not required.

The company demanded that certain persons whom it desired to examine as witnesses should be subpoenaed by the board of review and it considers itself aggrieved because the board would do no more than issue subpoenae for such persons and deliver them for such use as the company wished to make of them. The company contends that the board was required not only to issue the subpoenae but to produce the witnesses. Sec. 70.47 (8) (d), Stats., provides that the board may and upon the request of the assessor shall compel the attendance of witnesses. There was no request for such attendance by the assessor and the board had discretion otherwise. Par. (c) of the same subsection directs that the board may examine under oath such persons as it believes have knowledge of the property. This, too, is discretionary. We consider that the board went as far as it was required to do when it made its subpoenae available to the taxpayer which might then, at its own expense, compel the attendance of witnesses whom it wished to examine.

The board of review is not a court. Its hearings are necessarily and properly somewhat informal but even there we do not think participation of counsel as both witness and advocate is to be encouraged. In the present proceedings much of the company's evidence was given by a witness who was also its counsel. When his utterances shift rapidly between testimony, exposition, and argument, it cannot but lead to uncertainty concerning the capacity in which he addresses the board. When, thereafter, upon review by the court, he appears as counsel to argue matters in which he had appeared as witness there is a clear impropriety, at least. The learned trial court's criticism of counsel's protean character was merited.

*By the Court.*—Judgments reversed and causes remanded for further proceedings consistent with this opinion.